UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SHEANNA ALEXANDER, on behalf of herself and all others similarly situated,<br><br>               Plaintiff,<br><br>   v.<br><br>FULTON BANK,<br><br>               Defendant. | Civil Action No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

## CLASS ACTION COMPLAINT

Plaintiff Sheanna Alexander ("Plaintiff"), individually and on behalf of the Class of persons preliminarily defined below (the "Class"), makes the following allegations based upon, *inter alia*, the investigation made by her counsel, and based upon information and belief, except as to those allegations specifically pertaining to Plaintiff which are based on his personal knowledge, and, in support thereof, states as follows:

## NATURE OF THE ACTION

1. Plaintiff brings this action individually and on behalf of a Class of all similarly situated consumers against Defendant Fulton Bank ("Defendant"), arising from its routine practices of assessing multiple fees on an item.

2. Defendant misleadingly and deceptively misrepresents its fee practices including, upon information and belief, in its take-it-or-leave-it form adhesion contract.

3. As described herein, Defendant's practices violate the contract.

1

4.  Defendant's improper scheme to extract funds from account holders has victimized Plaintiff and hundreds of other similarly situated consumers. Unless enjoined, Defendant will continue to engage in these schemes and will continue to cause substantial injury to its consumers.

5.  Plaintiff, on behalf of herself and a Class of similarly situated consumers, seeks to end Defendant's abusive and predatory practice and force it to refund the improper charges. Plaintiff asserts a claim for breach of contract, including breach of the covenant of good faith and fair dealing, and seeks, *inter alia*, damages as set forth more fully below.

## PARTIES

6.  Plaintiff Sheanna Alexander is a citizen and resident of Salem, New Jersey and maintained a checking account with Defendant at all relevant times hereto.

7.  Defendant Fulton Bank is a bank with over $30 billion in assets. It is headquartered in Lancaster, Pennsylvania and has more than 200 branches and ATMs across Central Pennsylvania, Delaware, New Jersey, and Virginia.

## JURISDICTION AND VENUE

8.  This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. § 1332(d), this Court has original jurisdiction because

    a.  the proposed Class is comprised of at least 100 members; § 1332(d)(5)(B)

    b.  at least one member of the proposed class is a citizen of a State other than Pennsylvania (the State of which Defendant is a citizen), § 1332(d)(2)(A); and

    c.  the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs. § 1332(d)(2), (6).

9.  Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant is subject to personal jurisdiction here and regularly conducts business in this District, and because

a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this district.

## BACKGROUND FACTS

10. Overdraft fees and insufficient funds fees ("NSF fees") are among the primary fee generators for banks. According to a banking industry market research company, Moebs Services, in 2018 alone, banks generated an estimated $34.5 billion from overdraft fees. Overdraft Revenue Inches Up in 2018, https://bit.ly/3cbHNKV.

11. Unfortunately, the customers who are assessed these fees are the most vulnerable customers. Younger, lower-income, and non-white account holders are among those who were more likely to be assessed overdraft fees. Overdrawn: Consumer Experiences with Overdraft, Pew Charitable Trusts 8 (June 2014), https://bit.ly/3ksKD0I.

12. Because of this, industry leaders like Bank of America, Capital One, Wells Fargo, Alliant, and Ally have made plans to end the assessment of OD or NSF fees entirely. *See* Hugh Son, *Capital One to Drop Overdraft Fees for All Retail Banking Customers*, NBC News (Dec. 1, 2021), https://nbcnews.to/3DKSu2R; Paul R. La Monica, *Wells Fargo Ends Bounced Check Fees*, CNN (Jan. 12, 2022), https://bit.ly/3iTAN9k.

13. In line with this industry trend, the New York Attorney General recently asked other industry leading banks to end the assessment of all OD Fees by the summer of 2022. *NY Attorney General asks banks to end overdraft fees*, Elizabeth Dilts Marshall, Reuters (April 6, 2022).

14. Through the imposition of these fees, Defendant has made substantial revenue to the tune of tens of millions of dollars, seeking to turn its customers' financial struggles into revenue. *Id.*

## I. DEFENDANT ASSESSES TWO OR MORE FEES ON THE SAME ITEM RETURNED FOR INSUFFICIENT FUNDS

15. Defendant unlawfully maximizes its already profitable fees through the deceptive and contractually-prohibited practice of charging multiple NSF fees, or an NSF fee followed by an overdraft fee, on an item.

16. Unbeknownst to consumers, when Defendant reprocesses an electronic payment item, ACH item, or check for payment after it was initially rejected for insufficient funds, Defendant chooses to treat it as a new and unique item that is subject to yet another fee. But Defendant's contract never states that this counterintuitive and deceptive result could be possible and, in fact, promises the opposite.

17. The Federal Deposit Insurance Corporation (the "FDIC") has expressed concern with the practice of assessing multiple fees on an item. In 2012, the FDIC determined that one bank's assessment of more than one NSF Fee on the same item was a "deceptive and unfair act." *In the Matter of Higher One, Inc., Consent Order*, Consent Order, FDIC-1 1-700b, FDIC-1 1-704k, 2012 WL 7186313.

18. In the latest issue of the CFPB's Supervisory Highlight, the Bureau scrutinized junk fees, including the practice of charging multiple NSF fees, stating:

> Supervision found that institutions engaged in unfair acts or practices by charging consumers multiple NSF fees when the same transaction was presented multiple times for payment against an insufficient balance in the consumer's accounts, potentially as soon as the next day. The assessment of multiple NSF fees for the same transaction caused substantial monetary harm to consumers, totaling millions of dollars. These injuries were not reasonably avoidable by consumers, regardless of account opening disclosures. And the injuries were not outweighed by countervailing benefits to consumers or competition.

Consumer Financial Protection Bureau, "Supervisory Highlights Junk Fees Special Edition" (March 2023).

19. This abusive practice is not universal in the financial services industry. Indeed, major banks like Chase—the largest consumer bank in the country—do not undertake the practice of charging more than one fee on the same item when it is reprocessed. Instead, Chase charges one fee even if an item is reprocessed for payment multiple times.

20. Upon information and belief, the contract allows Defendant to take certain steps when paying a check, electronic payment item, or ACH item when the accountholder does not have sufficient funds to cover it. Specifically, Defendant may (a) pay the item and charge a fee; or (b) reject the item and charge a fee.

21. In contrast to the Contract, however, Defendant regularly assesses two or more fees on an item.

### A. The Imposition of Multiple Fees on a Single Item Violates Defendant's Express Promises and Representations

22. At the time Plaintiff incurred multiple fees on the same item, the contract promised that a single fee will be assessed on a single item.

23. On information and belief, on or around November 2022, Defendant revised its contract to disclose eliminate non-sufficient funds fees charges.

24. The same item on an account cannot conceivably become a new one when it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit it.

25. At the time Plaintiff incurred the improper fees, there was zero indication anywhere in the contract that the same item is eligible to incur multiple fees.

26. Even if Defendant reprocesses an instruction for payment, it is still the same "item." Its reprocessing is simply another attempt to effectuate an account holder's original order or instruction.

5

27. The contract never discussed a circumstance where Defendant may assess multiple fees for a single check, electronic payment item, or ACH item that was returned for insufficient funds and later reprocessed one or more times and returned again.

28. Defendant promised that one fee will be assessed on an item, and this term must mean all iterations of the same instruction for payment. As such, Defendant breached the contract when it charged more than one fee per item.

29. Reasonable consumers understood any given authorization for payment to be one, singular "item."

30. Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same item will be treated as the same "item," which Defendant will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere did Defendant and its customers agree that Defendant will treat each reprocessing of a check, electronic payment item, or ACH item as a separate item, subject to additional fees.

31. Customers reasonably understand that Defendant's reprocessing of checks, electronic payment items, and ACH items are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger fees. In other words, it is always the same item.

32. Banks and credit unions like Defendant that employ this abusive practice require their accountholders to expressly agree to it—something Defendant here did not do.

33. Community Bank, NA, discloses its fee practice in its online banking agreement, in all capital letters, as follows:

> We cannot dictate whether or not (or how many times) a merchant will submit a previously presented item. **You may be charged more than one Overdraft or**

**NSF Fee if a merchant submits a single transaction multiple times after it has been rejected or returned.**

*Overdraft and Unavailable Funds Practices Disclosure*, Community Bank N.A. 5 (Nov. 12, 2019), https://bit.ly/3uQafe7 (emphasis added).

34. Upon information and belief, at the time Plaintiff incurred multiple fees, Defendant's contract provided no such authorization, and actually promises the opposite—Defendant may charge, at most, a fee, per item.

   a. **Plaintiff's Experiences**

35. In support of Plaintiff's claim, Plaintiff offers an example of fees that should not have been assessed against his checking account. As alleged below, Defendant: (a) reprocessed a previously declined item; and (b) charged a fee upon reprocessing.

36. On February 18, 2022, Plaintiff was assessed multiple fees on an item.

37. Plaintiff understood the payment to be a single item as is laid out in the contract, capable of receiving, at most, a single fee if Defendant returned it, or a single fee if Defendant paid it.

   II. **NONE OF THESE FEES WERE ERRORS.**

38. The improper fees charged by Defendant to Plaintiff's accounts were not errors by Defendant, but rather were intentional charges made by Defendant as part of its standard processing of transactions.

39. Plaintiff therefore had no duty to report the fees as errors because they were not; instead, they were part of the systematic and intentional assessment of fees according to Defendant's standard practices.

40. Moreover, any such reporting would have been futile as Defendant's own contract admits that Defendant made a decision to charge the fees.

7

### III. THE IMPOSITION OF THESE IMPROPER FEES BREACHES DEFENDANT'S DUTY OF GOOD FAITH AND FAIR DEALING

41. Parties to a contract are required not only to adhere to the express conditions of the contract but also to act in good faith when they are invested with a discretionary power over the other party. This creates an implied duty to act in accordance with account holders' reasonable expectations and means that the bank or credit union is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, the bank or credit union has a duty to honor transaction requests in a way that is fair to its customers and is prohibited from exercising its discretion to pile on even greater penalties on its account holders.

42. Here—in the adhesion agreements Defendant foisted on Plaintiff and its other customers—Defendant has provided itself numerous discretionary powers affecting customers' accounts. But instead of exercising that discretion in good faith and consistent with consumers' reasonable expectations, Defendant abuses that discretion to take money out of consumers' accounts without their permission and contrary to their reasonable expectations that they will not be charged improper fees.

43. Defendant abuses its discretion in its own favor—and to the prejudice of Plaintiff and its other customers—when it assesses fees in this manner. By *always* assessing these fees to the prejudice of Plaintiff and other customers, Defendant breaches their reasonable expectations and, in doing so, violates its duty to act in good faith. This is a breach of Defendant's implied covenant to engage in fair dealing and to act in good faith.

44. It was bad faith and totally outside Plaintiff' reasonable expectations for Defendant to use its discretion in this way.

45. When Defendant charges improper fees in this way, Defendant uses its discretion to interpret the meaning of key terms in an unreasonable way that violates common sense and

reasonable consumers' expectations. Defendant uses its contractual discretion to set the meaning of those terms to choose a meaning that directly causes more fees.

## CLASS ALLEGATIONS

46. Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. The proposed class is defined as:

> All citizens of the United States who, during the applicable statute of limitations period through the present, were assessed multiple fees on an item on a Defendant checking account.

47. Excluded from the Class are Defendant, Defendant's subsidiaries and affiliates, their officers, directors and members of their immediate families and any entity in which Defendant has a controlling interest, the legal representatives, heirs, successors or assigns of any such excluded party, all customers who make a timely election to be excluded; governmental entities; and all judges assigned to hear any aspect of this litigation, their immediate family members, and chambers staff.

48. Plaintiff reserves the right to modify or amend the definition of the proposed Class and/or to add a subclass(es), if necessary, before this Court determines whether certification is appropriate.

49. Plaintiff readily satisfies the requirements set forth in Federal Rule of Civil Procedure Rule 23(a) and (b).

50. <u>Numerosity</u>: The parties are numerous such that joinder is impracticable. Given the nature of the banking industry, and subject to class discovery, the Class consists of thousands of members or more, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Defendant's records. Defendant has the administrative capability

through its computer systems and other records to identify all members of the Class, and such specific information is not otherwise available to Plaintiff.

51. <u>Commonality</u>: The questions here are ones of common or general interest such that there is a well-defined community of interest among the members of the Class. Such common legal or factual questions include, but are not limited to:

    a) Whether Defendant charged multiple fees on the same item;

    b) Whether the conduct enumerated above violates the contract;

    c) Whether the conduct enumerated above violates the covenant of good faith and fair dealing;

    d) The appropriate measure of damages.

52. <u>Typicality</u>: Plaintiff's claims are typical of the claims of the other members of the Class in that they arise out of the same wrongful business practices by Defendant, as described herein.

53. <u>Adequacy</u>: Plaintiff is a more than adequate representative of the Class in that Plaintiff is a Defendant checking accountholder and has suffered damages as a result of Defendant's contract violations. In addition:

    a) Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and has retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of accountholders against financial institutions;

    b) There is no conflict of interest between Plaintiff and the unnamed members of the Class;

c) Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

d) Plaintiff's legal counsel has the financial and legal resources to meet the substantial costs and legal issues associated with this type of litigation.

54. <u>Predominance</u>: Common questions predominate over questions that may affect only individual class members because Defendant has acted on grounds generally applicable to the class. In other words, Defendant improperly and regularly charges its customers multiple fees on the same item.

55. <u>Superiority</u>: It is impracticable to bring members of the Class's individual claims before the Court. Class treatment permits a large number of similarly situated persons or entities to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of evidence, effort, expense, or the possibility of inconsistent or contradictory judgments that numerous individual actions would engender. The benefits of the class mechanism, including providing injured persons or entities with a method for obtaining redress on claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

56. Plaintiff knows of no difficulty to be encountered in the maintenance of this action that would preclude its maintenance as a class action.

57. Defendant has acted or refused to act on grounds generally applicable to the class, thereby making appropriate corresponding declaratory relief with respect to the Class as a whole.

58. All conditions precedent to bringing this action have been satisfied and/or waived.

**FIRST CLAIM FOR RELIEF**
**Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing**
**(On Behalf of Plaintiff and the Class)**

59. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

60. Plaintiff and Defendant have contracted for bank account deposit, checking, ATM, and debit card services.

61. Defendant mischaracterized in the contract its true fee practices and breached the express terms of the contract.

62. No Contract provision authorizes Defendant to charge multiple fees on an item.

63. Under Pennsylvania law, the covenant of good faith and fair dealing is an implied promise contained in every contract that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. Good faith is also mandated by the Uniform Commercial Code ("UCC"), which covers banking transactions.

64. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

65. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

66. Defendant has breached the covenant of good faith and fair dealing through its overdraft policies and practices as alleged herein.

67. Defendant harms consumers by abusing its contractual discretion in a number of ways that no reasonable customer could anticipate.

68. Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them by the contract.

69. Plaintiff and members of the Class have sustained damages as a result of Defendant's breach of the contract and breach of the covenant of good faith and fair dealing.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests that the Court:

a. Certify this case as a class action, designating Plaintiff as class representative and designating the undersigned as Class Counsel;

b. Award Plaintiff and the Class actual damages in amount according to proof;

c. Award Plaintiff and the Class restitution in an amount to be proven at trial;

d. Award Plaintiff and the Class pre-judgment interest in the amount permitted by law;

e. Award Plaintiff and the Class attorneys' fees and costs as permitted by law;

f. Declare Defendant's practices outlined herein to be unlawful and a breach of contract;

g. Grant Plaintiff and the Class a trial by jury;

h. Grant leave to amend these pleadings to conform to evidence produced at trial; and

i. Grant such other relief as the Court deems just and proper.

## **JURY DEMAND**

Plaintiff, by counsel, demands trial by jury.

Dated: October 7, 2024                              Respectfully submitted,

By: */s/ Jonathan M. Jagher*
Jonathan M. Jagher
**FREED KANNER LONDON & MILLEN LLC**
923 Fayette Street
Conshohocken, PA 19428
(610) 234-6486
jjagher@fklmlaw.com

Jeffrey D. Kaliel*
1100 15th Street NW, 4th Floor
Washington, D.C. 20005
Telephone: (202) 350-4783
arosenberg@kalielgold.com
jkaliel@kalielpllc.com

**KALIELGOLD PLLC**
Sophia Goren Gold*
950 Gilman Street, Suite 200
Berkeley, CA 94710
Telephone: (202) 350-4783
sgold@kalielgold.com

Andrew Shamis
**SHAMIS & GENTILE, P.A.**
14 NE 1st Avenue, Suite 705
Miami, FL 33132
(305) 479-2299
ashamis@shamisgentile.com

* *Pro Hac Vice* applications to be submitted
*Counsel for Plaintiff and the Proposed Class*